**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Deborah Mitchell, PhD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 2:19-cv-4162 |
| | : | |
| The Ohio State University, *et al*., | : | **JUDGE SARAH D. MORRISON** |
| | : | **Magistrate Judge Vascura** |
| Defendants. | : | |
| | : | |

**OPINION & ORDER**

Plaintiff Deborah Mitchell, Ph.D. alleges that Defendants The Ohio State University, Michael Drake, M.D., Bruce McPheron, Ph.D., Anil Makhija, Ph.D., Walter Zinn, Ph.D., and Paul Velasco terminated her employment based upon her gender and in retaliation for her gender discrimination complaints to Ohio State. She also alleges Defendants violated her due process and equal protection rights during the termination process. Defendants' Motion to Dismiss ("Motion") is fully briefed. (ECF No. 44.) After due consideration, the Court **DENIES** the Motion in part and **GRANTS** the remainder.

**I.     BACKGROUND**

The Second Amended Complaint details incidents dating back to 1990. The following recitation of facts is limited to the relevant timeframe and is accepted as true only for the purposes of the instant motion.

**A.  Dr. Mitchell's Employment at Ohio State**

Ohio State University is an institution of higher education with a business school named the Fisher College of Business. (ECF No. 38 at ¶ 9). Ohio State hired Dr. Mitchell in March

2012 as a Clinical Associate Professor at Fisher in the marketing and logistics department. *Id*. ¶ 8. At the time, Ohio State knew that Dr. Mitchell served as President of CypressTree Corp., her own consulting business. *Id*. ¶¶ 87-88.

### 1. Executive Education

Dr. Mitchell taught for the Fisher Executive Education ("Executive Education"), a unit within Fisher focused on teaching executive-level individuals. *Id*. ¶¶ 65-66, 94-96. Non-defendant John Resnick is a program manager for Executive Education. *Id*. ¶ 68. Non-defendant Marty Schwalbe was his boss. *Id*. ¶¶ 69-74. In 2014, Dr. Mitchell told Mr. Schwalbe that Mr. Resnick was sexually harassing female Executive Education staffers. *Id*. ¶ 69. That same year, she also told Mr. Schwalbe that Mr. Resnink had changed teacher evaluations without authorization. *Id*. ¶ 73. Fisher took no action regarding her complaints. *Id*. ¶ 72. Instead, Mr. Resnick was promoted. *Id*.

Dr. Mitchell taught employees from the Ohio Department of Medicaid ("ODM") "business concepts for their professional development" through the Executive Education program. *Id*. ¶¶ 94, 96. After the course completed, Dr. Mitchell personally followed-up with those employees twice in the summer of 2015. *Id*. ¶ 99. Shortly after her final visit with those students, ODM and CypressTree entered in an embedded consulting agreement ("ODM Contract") in August 2015 involving material different from that covered in the Executive Education program. *Id*. ¶¶ 103, 104, 110.

Defendant Paul Velasco became the Executive Director of Executive Education in April 2016. *Id*. ¶ 119.  In May 2016, Mr. Schwalbe told Mr. Velasco that the ODM Contract violated Dr. Mitchell's Executive Education contract. *Id*. ¶ 120. Dr. Mitchell was not notified of Mr.

Schwalbe's complaint at that time. *Id*. ¶ 123. Instead, CypressTree continued to perform under the ODM Contract, which was ultimately extended. *Id*. ¶ 121.

## 2. The 04-Complaint Process and Dr. Mitchell's Termination.

On January 3, 2017, Mr. Velasco lodged a complaint against Dr. Mitchell pursuant to Ohio Administrative Code ("OAC") 3335-5-04[1] ("04-Complaint") with Defendant Dr. Anil Makhija, Fisher's Dean. *Id*. ¶ 124. The 04-Complaint alleged that the ODM Contract constituted "grave misconduct" because it "unfairly competed" with Ohio State. *Id*. ¶ 125. Specifically, the 04-Complaint asserted that Dr. Mitchell, via the ODM Contract, violated the: (1) Faculty Conflict of Commitment Policy; (2) Faculty Financial Conflict of Interest Policy; and (3) no solicitation clause in her Executive Education teaching contract. *Id*. ¶ 115. Pursuant to OAC 3335-5-04(B)(5), Dr. Makhija sent the 04-Complaint to Dr. Mitchell's department chair, non-defendant Dr. Tom Goldsby, for initial review. *Id*. ¶ 129. Dr. Goldsby found probable cause only as to the Faculty Financial Interest Policy ("Policy") count and referred the matter to Dr. Makhija under OAC 3335-5-04(C)(2). *Id*. ¶¶ 116, 129.

This triggered Dr. Mitchell's February 2017 meeting with Dr. Makhija under OAC 3335-5-04(D)(1). *Id*. ¶ 132. During that encounter, she presented him with two binders of documents supporting her position that she had not violated the Policy. *Id*. Seven months later, Dr. Makhija determined that probable cause existed as to the violation and that an informal resolution was inappropriate. He then turned the 04-Complaint over to Fisher's College Investigation Committee ("CIC") pursuant OAC 3335-5-04(D)(2). *Id*. ¶ 134. The CIC was comprised of Dr. Mitchell's peers from Fisher. *Id*. ¶ 135.

---

[1] This rule addresses "Hearing procedures for complaints against faculty members."

Dr. Mitchell received no communication from the CIC until February 26, 2018, when it asked for a redacted document that she had previously provided to Dr. Makhija in February 2017. *Id*. ¶ 136. Due to a miscommunication Dr. Mitchell did not provide the requested information. *Id*. ¶¶ 137, 140, 143. A CIC member contacted ODM to obtain the information, although the OAC required him to keep the 04-Complaint confidential. *Id*. ¶¶ 143-44. Dr. Mitchell requested that member be removed from the CIC for that action but her request was denied. *Id*. ¶ 145.

The CIC concluded in July 2018 that Dr. Mitchell had violated the Policy and recommended that she be immediately terminated. *Id*. ¶ 148. One month later, Dr. Makhija affirmed the Committee's decision and barred Dr. Mitchell from teaching at Fisher while requiring her to perform her other regular duties. *Id*. ¶¶ 150-51.

Dr. Mitchell appealed Dr. Makhija's decision to Dr. Bruce McPheron, Ohio State's Executive Vice President and Provost and Chief Academic Officer.[2] *Id*. ¶¶ 11, 154. In November 2018, Dr. McPheron affirmed the decision, so Dr. Mitchell appealed his determination. *Id*. ¶ 155.

Her appeal resulted in an April 29, 2019 hearing before the Faculty Hearing Committee ("FHC"). The FHC was comprised of faculty from across Ohio State. At the hearing, she presented evidence and testimony but was unable to examine the complainants, Mr. Schwalbe and Mr. Velasco. *Id*. ¶¶ 155-57. Ohio State did not present any testimony at the hearing,

---

[2] *See* https://oaa.osu.edu/mcpheron-bruce (visited August 11, 2020). *See Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) (a court may take judicial notice of facts that are not reasonably in dispute).

choosing instead to rely upon documentary evidence in support of the recommendation for termination. *Id.* ¶¶ 157-59.

The FHC also ruled against Dr. Mitchell, so she appealed to Ohio State President Dr. Michael Drake. *Id.* ¶ 160. On July 31, 2019, Dr. Drake recommended that Ohio State's Board of Trustees affirm her termination. *Id.* ¶ 162. The Board agreed, and Dr. Mitchell's employment at Ohio State was terminated on August 30, 2019. *Id.* ¶ 163.

### 3. Reappointment

Dr. Mitchell's 2018-2019 reappointment request was proceeding simultaneously with the later stages of the 04-Complaint process. Dr. Mitchell provided her updated dossier to Dr. Goldsby in the fall of 2018 as part of the reappointment process. *Id.* ¶ 229. The reappointment decision was to be completely separate from the 04-Complaint. *Id.* ¶ 230.

After the voting faculty members within her department considered her materials, zero voted to renew, two voted not to renew and nine abstained. *Id.* ¶ 233. The votes against reappointment were based on the ODM Contract's failing to enhance Fisher's national and international reputation and on the committee's inability to gauge Dr. Mitchell's effectiveness at teaching a core class.[3] *Id.* ¶ 237. Dr. Makhija noted the two votes against renewal when declining to reappoint Dr. Mitchell. *Id.* ¶ 236. Ohio State hired a male professor without a marketing degree to replace her. *Id.* ¶¶ 241-42.

Dr. Mitchell appealed the non-renewal to Ohio State's Committee on Academic Freedom and Responsibility ("CAFR") which decided that Fisher had utilized an improper reappointment

---

[3] Dr. Makhija had removed her Fisher teaching duties in July 2018 as part of the 04-Complaint process.

process because nine abstentions out of eleven did not produce a quorum. *Id.* ¶¶ 243-45. But her

August 30, 2019 termination mooted her reappointment and CAFR's decision. *Id.* ¶ 246.

### B. Second Amended Complaint

Dr. Mitchell filed her Charge Affidavit with the United States Equal Employment

Opportunity Commission on October 25, 2018. *Id.* ¶ 2. She instituted this case within ninety days

of receiving her Right to Sue Letter. *Id.*

Dr. Mitchell's first two counts are against Ohio State for gender discrimination under

Title VII, 42 U.S.C. § 2000 *et seq.*, and for retaliation under Title IX, 20 U.S.C. § 1681. *Id.* ¶¶

232-39. The remaining two counts are against Dr. Drake, Dr. McPheron, Dr. Makhija, Dr. Zinn

and Mr. Velasco (collectively "Individual Defendants") in their personal and official capacities.

Those claims allege violation of due process and equal protection under the Fourteenth

Amendment pursuant to 42 U.S.C. § 1983. *Id.* ¶¶ 260-83. She seeks declaratory, injunctive, and

monetary relief. *Id.* at Wherefore ¶¶ a-g.

## II. STANDARD OF REVIEW

Defendants proceed under Fed. R. Civ. P. 12(b)(1) when arguing that some of Dr.

Mitchell's claims fall outside the governing statutes of limitations. Rule 12(b)(1) provides that

the defendant may file a motion to dismiss based on a "lack of jurisdiction over the subject

matter." The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter

jurisdiction depends on whether the defendant makes a facial or factual challenge to subject

matter jurisdiction. *Wayside Church v. Van Buren County*, 847 F.3d 812, 816-17 (6th Cir. 2017).

Only the former is present here. A facial attack "questions merely the sufficiency of the

pleading." *Gentek Bldg Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)

(citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). It requires

the court to "take[] the allegations in the complaint as true." *Id*. The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus*., 798 F.2d 913, 915 (6th Cir. 1986).

Defendants also rely on Rule 12(b)(6) to seek dismissal. When addressing motions under this rule, the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc*., 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### III.    ANALYSIS

#### A.  Dr. Mitchell's Claims Against Ohio State

##### 1.   Title VII Gender Discrimination

Dr. Mitchell asserts that Ohio State terminated her because she is a woman in violation of Title VII. Ohio State counters that the Second Amended Complaint's failure to delineate how the termination decision was gender-based necessitates dismissal of this count.

Each side disputes Dr. Mitchell's pleading burden at the motion to dismiss stage for her Title VII claim. Further discussion of the standard of review is therefore necessary. In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002), the Supreme Court unanimously held that the *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is an evidentiary standard, not a pleading requirement. "As such, a plaintiff alleging a federal employment-discrimination claim is not required to plead facts establishing a *prima facie* case in order to state a claim for relief." *Vigil v. STS Sys. Integration, LLC*, No. 3:18-cv-324, 2019 U.S. Dist. LEXIS 164453, at *9 (S.D. Ohio Sep. 25, 2019) (Rice, J.) (citation omitted). Instead, an employment-discrimination plaintiff satisfies her pleading burden by drafting "'a short and plain statement of the claim' consistent with Federal Rule of Civil Procedure 8(a)." *Swierkiewicz*, 534 U.S. at 508 (quoting Fed. Rule Civ. Proc. 8(a)(2)). "The plaintiff, however, must still satisfy the 'plausibility' standard in *Twombly* and *Iqbal* in order to determine if the factual allegations in a complaint support the legal conclusions." *Vigil*, 2019 U.S. Dist. LEXIS 164453, at *9 (citation omitted). Although "detailed factual allegations" are not required in the Complaint, there must be sufficient "factual content" so that a court, using its "judicial experience and common sense," can "draw the reasonable inference" of discrimination. *Id.* (citations omitted).

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1). In an indirect proof case like this, a Title VII plaintiff must show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably. *Peltier v. United States*, 388 F.3d 984,

987 (6th Cir. 2004). Dr. Mitchell need not mechanically recite these elements; instead, she must allege a sufficient factual basis for her claim that Ohio State unlawfully terminated her on the basis of her gender. *See Masaebi v. Arby's Corp.*, No. 2:19-cv-5271, 2020 U.S. Dist. LEXIS 46228, at *13 (S.D. Ohio Mar. 17, 2020) (Sargus, J.) ("Again, for purposes of a motion to dismiss, a plaintiff need not establish each element of the *prima facie* case because *McDonnell-Douglas* is an evidentiary standard, not a pleading standard.").

Dr. Mitchell has alleged the first three elements. The focus is on the similarly situated element. The Sixth Circuit applies a three-factor test when determining whether individuals are "similarly situated" for Title VII gender discrimination purposes. Individuals are more likely to be similarly situated if they "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

In this regard, Dr. Mitchell's Second Amended Complaint identifies male Fischer employees who shared her supervisor, were bound by the same policies, and engaged in similar conduct who were not terminated. (ECF No. 38 ¶¶ 166-201.) She also claims she was replaced by a male professor who lacked a marketing degree. *Id.* ¶¶ 239-241. From this, the Court uses its "judicial experience and common sense," to "draw the reasonable inference" of discrimination from the Second Amended Complaint's highlighted allegations. Hence, Ohio State's Motion to Dismiss Dr. Mitchell's Title VII gender discrimination count (Count I) is **DENIED**.  (ECF No. 44.)

### 2. Title IX Retaliation

While "Title VII focuses on employment discrimination 'because of' individual characteristics, including sex," Title IX focuses "exclusively on sex discrimination in federally funded education programs." *Goldblum v. Univ. of Cincinnati*, No. 1:19-cv-398, 2019 U.S. Dist. LEXIS 181324, at *20-21 (S.D. Ohio Oct. 21, 2019) (Bowman, M.J.) (citing 42 U.S.C. § 2000e-2(a)(1)) (adopted by *Goldblum v. Univ. of Cincinnati*, 415 F. Supp. 3d 799, 801 (S.D. Ohio 2019)). To illustrate, Section 901(a) of Title IX of the Education Amendments of 1972 states:

> No person in the United States shall, on the basis of sex, be
> excluded from participation in, be denied the benefits of, or be
> subjected to discrimination under any education program or
> activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a). Ohio State receives federal educational funding. *Huang v. Ohio State Univ.*, No. 2:19-cv-1976, 2020 U.S. Dist. LEXIS 19413, at *24 (Graham, J.) (S.D. Ohio Feb. 3, 2020).

"Although Title IX does not contain an express provision against 'retaliation,' it supports retaliation claims 'where the funding recipient retaliates against an individual because [she] has complained about sex discrimination.'" *Goldblum*, 2019 U.S. Dist. LEXIS 181324, at *20-21 (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005)). In order to plead a retaliation claim under Title IX, Dr. Mitchell must allege that: (1) she engaged in a protected activity; (2) Ohio State knew about her exercise of protected rights; (3) Ohio State thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the adverse action. *Herman v. Ohio Univ.*, No. 2:19-cv-201, 2019 U.S. Dist. LEXIS 202813, at *23-24 (Morrison, J.) (S.D. Ohio Nov. 22, 2019) (citation omitted). Again, Dr. Mitchell is not required to plead facts establishing a *prima facie* case of retaliation in order to state a claim for relief. She must, however, provide sufficient factual content so that the

Court, using its judicial experience and common sense, can draw the reasonable inference of retaliation.

Dr. Mitchell asserts that her complaints to various individuals at Fisher about disparate sexual treatment within the college amount to protected conduct. Ohio State does not challenge that contention. Nor does Ohio State oppose Dr. Mitchell's characterization of her termination as a materially adverse action. Rather, Ohio State focuses on the Second Amended Complaint's insufficiency as to the knowledge and causation components of the analysis. (ECF No. 44 at 19.)

The Court begins and ends its discussion with causation. The Amended Complaint makes clear that Dr. Mitchell's retaliation count is premised upon her reports of sexual discrimination and harassment to individuals at Fisher from 2012-2015. Those complaints, which Ohio State acknowledges constitute Title IX protected conduct for purposes of its Motion, include her: (1) 2012 complaints about a male marketing professor at Fisher sexually discriminating against female students; (2) 2013 complaints about sexual discrimination within Fisher; (3) 2014 complaints about Fisher's promoting a male professor despite Dr. Mitchell's complaints about him while not promoting her; (4) 2014 complaints of sexual harassment and improper modification of teacher reviews; and (5) 2015 August – September complaints about sexual discrimination in Fisher. *See* ECF No. 38 at ¶ ¶ 13, 43, 45, 57, 69, 72, 223-24.

"To establish causation in a Title IX retaliation case, the time gap between the protected activity and the retaliatory act cannot be years in length." *Dibbern*, 2013 U.S. Dist. LEXIS 163538, at *29-30. Yet, almost two years passed between her most recent complaints in 2015 and the January 3, 2017 institution of the 04-Complaint proceedings. And four years passed between her 2015 complaints and her 2019 termination. While those earlier complaints may be "relevant background information" as Dr. Mitchell urges, they cannot form the basis for her

retaliation count. (ECF No. 46 at 53.) The Court therefore **GRANTS** Ohio State's Motion to

Dismiss Dr. Mitchell's Title IX retaliation claim (Count II) under Fed. R. Civ. P. 12(b)(6). (ECF

No. 44.)

### B. Dr. Mitchell's Claims Against the Individual Defendants

Dr. Mitchell alleges that the Individual Defendants violated her right to due process and

to equal protection under the Fourteenth Amendment via the 04-Complaint process and her

termination. She brings those claims against the Individual Defendants in their personal

capacities for money damages and against them in their official capacities for injunctive relief.

The Court first details the § 1983 framework before examining statute of limitations issues. The

Court then turns to a substantive analysis of Dr. Mitchell's due process claims (Count III) and

concludes with a discussion of her equal protection claims (Count IV).

### 1. Section 1983 framework

"The Fourteenth Amendment does not create a private right of action; instead, § 1983

provides a cause of action for all citizens injured by an abridgement of th[e] protections set forth

in the Equal Protection and Due Process Clauses of the Fourteenth Amendment." *Brent v. Wayne*

*Cty. Dep't of Human Servs.*, 901 F.3d 656, 683 (6th Cir. 2018) (internal quotations and citation

omitted.) "Section 1983 establishes a private right of action against any person who, acting under

the color of state law, causes another person to be subjected to the deprivation of a right,

privilege, or immunity secured by the Constitution or laws of the United States." *Herman v. Ohio*

*Univ.*, No. 2:19-cv-201, 2019 U.S. Dist. LEXIS 202806, at *3 (S.D. Ohio Nov. 22, 2019)

(internal quotation omitted). To state a claim under this section, Dr. Mitchell must "set forth facts

that, when construed favorably, establish (1) the deprivation of a right secured by the

Constitution or laws of the United States (2) caused by a person acting under color of state law."

*Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018); *see also* ECF No. 38 ¶¶ 262-65, 277-78. The Individual Defendants acknowledge their state actor status. They challenge Dr. Mitchell's allegation that their actions deprived her of her constitutional rights.

Dr. Mitchell seeks to impose § 1983 liability upon the Individual Defendants in their personal and official capacities. "[A]n individual-capacity claim seeks to hold an official personally liable for the wrong alleged." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). So, she must also set forth facts that the Individual Defendants "'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Official-capacity § 1983 claims are limited to prospective injunctive relief. *Ex parte Young*, 209 U.S. 123 (1908).

### 2. Section 1983 Claims against Dr. Zinn and Mr. Velasco

Two of the Individual Defendants seek dismissal of Dr. Mitchell's § 1983 claims against them on statute of limitations grounds. The statute of limitations for § 1983 claims is two years. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855-56 (6th Cir. 2003); *see also Brown v. Pendleton*, 869 F.2d 989, 990 (6th Cir. 1989).

Each of Dr. Mitchell's § 1983 allegations against Dr. Zinn, a Fisher professor who held numerous administrative roles within the college during Dr. Mitchell's tenure, fall outside of the two-year window. (ECF No. 38 ¶ 13.) The October 23, 2019 First Amended Complaint asserts that he notified Dr. Mitchell about her re-assigned teaching duties on December 23, 2013. *Id.* ¶ 207. Next, Dr. Mitchell alleges that Dr. Zinn gave her a negative performance review on June 20, 2014, "despite [her] also being rated 'substantially beyond the norm' for her consistent voluntary

13

contributions to Exec Ed." *Id*. ¶ 210. Lastly, she states that Dr. Zinn reduced her contract from the standard five years down to three during the 2015 reinstatement process. *Id*. at ¶ 227. All of these actions occurred more than two years before her First Amended Complaint[4] was filed so Dr. Mitchell's § 1983 claims against Dr. Zinn are dismissed on statute of limitations grounds. Dr. Zinn's Motion to Dismiss the § 1983 counts against him is **GRANTED**. (ECF No. 44.)

The only action the First Amended Complaint assigned to Mr. Velasco was his January 3, 2017 filing of the 04-Complaint against Dr. Mitchell. (ECF No. 44 at 21-22; ECF No. 51 at 7-8; ECF No. 38 at ¶ 122). Because that was more than two years before the First Amended Complaint[5] was lodged, the Court **GRANTS** Mr. Velasco's Motion to Dismiss Dr. Mitchell's § 1983 claims against him pursuant to the two-year limitation provision. (ECF No. 44.)

Consequently, the Individual Defendants that remain are Dr. Makhija, Dr. Drake and Dr. McPheron (the "Remaining Individual Defendants").

### 3. Due Process

#### a. Personal capacities

The Remaining Individual Defendants assert three grounds for dismissal of Dr. Mitchell's procedural due process claims in their personal capacities. First, the Remaining Individual Defendants contend that the 04-Complaint Process was constitutionally sufficient. Dr. Mitchell counters that the reassignment of her teaching duties without a hearing and her inability to cross examine her accusers at the April 2019 hearing discounts this ground for dismissal. Second, the

---

[4] Dr. Mitchell did not assert her § 1983 claims against Dr. Zinn until her First Amended Complaint. Even if they relate back to the September 9, 2019 Original Complaint under Fed. R. Civ. P. 15(c), they are still outside of the two-year window.

[5] Dr. Mitchell did not assert her § 1983 claims against Mr. Velasco until her First Amended Complaint. Even if they relate back to the September 9, 2019 Original Complaint under Fed. R. Civ. P. 15(c), they are still outside of the two-year window.

Remaining Individual Defendants assert that they are entitled to qualified immunity. Dr. Mitchell responds by asking the Court to hold that there is a constitutionally-recognized right to cross-examination here. Third, the Remaining Individual Defendants argue that the Second Amended Complaint does not contain sufficient detail as to each of their roles in their alleged violation of Dr. Mitchell's due process rights. Dr. Mitchell responds by stating her governing pleading adequately recounts each Remaining Individual Defendant's involvement in the alleged due process deprivations. Finding the Individual Defendants' first and second arguments dispositive, the Court need not examine their third basis for dismissal.

"[D]ue process can be summarized as the requirement that a person . . . be given notice of the case against him and an opportunity to meet it." *Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015) (internal quotations and citation omitted). To allege a procedural due process violation under § 1983, Dr. Mitchell must assert a sufficient factual basis that: (1) she had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) she was deprived of that protected interest within the meaning of the due process clause; and (3) the Remaining Individual Defendants did not afford her adequate procedural rights before depriving her of her protected interest. *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 349 (6th Cir. 2010). The Remaining Individual Defendants assume solely for the purpose of their Motion that Dr. Mitchell sufficiently pleads the first and second elements. (ECF No. 23 at 30.) That leaves whether the Second Amended Complaint contains an adequate factual predicate showing that the Remaining Individual Defendants deprived her due process rights when terminating her employment. To that end, the Court addresses each stated ground of violation seriatim:

● *Failing to follow Ohio State's policy covering the process for investigation and adjudicating complaints of misconduct by members of the faculty; failing to apply the clear and convincing evidence standard to allegations of grave misconduct; failing to maintain confidentiality regarding the 04-Complaint; and conducting a pretextual, arbitrary and capricious 04-Complaint investigation in violation of established policies*. (ECF No. 38 ¶¶ 265 a, c, d, i.) There is no procedural due process claim arising from a failure to adhere to University policies and guidelines. *See Anderson v. Ohio State University*, 26 Fed. Appx. 412, 414 (6th Cir. 2001) (citing *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996) ("Violation of a state's formal procedure, however, does not in and of itself implicate constitutional due process concerns.")). The Remaining Individual Defendants' Motion to Dismiss these counts against them in their personal capacities is **GRANTED**. (ECF No. 44.)

● *Intentionally interfering with Dr. Mitchell's business associations and contractual relationships during the 04-Complaint process; terminating Dr. Mitchell for legitimate business activity that did not meet the grave misconduct standard; terminating Dr. Mitchell for improper and pre-textual reasons and in retaliation for her valid complaints of sex discrimination*. (ECF No. 38 ¶¶ 265 e, f, g, h.) Causation is not at issue in a due process analysis; instead, the relevant query is whether the alleged deprivation occurred without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). In other words, it is not the why, but the how. The focus is not on the reason for termination; instead, it is on whether due process was provided during the termination process. The Remaining Individual Defendants' Motion to Dismiss these counts against them in their personal capacities is **GRANTED**. (ECF No. 44.)

● *Reassigning/Removing her teaching duties without a hearing*. (ECF No. 44 at ¶ 151.) Dr. Mitchell claims that Dr. Makhija removed her from teaching graduate students without

16

a hearing in violation of her due process protections. (ECF No. 38 ¶ 150.) Dr. Mitchell does not allege that her pay or benefits decreased with this modification to her job duties. "The Supreme Court has rejected a categorical requirement that a suspension without pay be preceded by a hearing, . . . ." *Sketch v. Boone Cty.*, No. 14-130-DLB-CJS, 2016 U.S. Dist. LEXIS 76258, at *23 (E.D. Ky. June 10, 2016) (citing *Gilbert v. Homar*, 520 U.S. 924, 929 (1997)). The Sixth Circuit has similarly held that a police chief was not unconstitutionally deprived of a misconduct investigation after being reassigned because he was neither terminated nor lost pay or benefits. *Jackson v. City of Columbus*, 194 F.3d 737, 749 (6th Cir. 1999). Dr. Mitchell's job duties were altered but her pay and benefits were not. Hence, the Motion is **GRANTED** as to Dr. Mitchell's reassignment claims against the Remaining Individual Defendants in their personal capacities. (ECF No. 44.)

●        *Denying Dr. Mitchell the right to cross-examine her accusers*. (ECF No. 38 at ¶ 265(b).) The Court performs a qualified immunity analysis for this alleged violation.

 Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In so doing, "qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, it is important to resolve immunity issues "at the earliest possible stage in litigation." *Id.* at 232.

Where, as here, a defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to that defense. *Baker v. City of*

17

*Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006). To determine whether a defendant is entitled to qualified immunity, the Court asks two questions: "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 231 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). It does not matter which query is addressed first; for immunity to attach, both must be satisfied. *Pearson*, 555 U.S. at 236; *see also Doe v. Miami Univ.*, 882 F.3d 579, 604 (6th Cir. 2018) (internal citations omitted).

Both sides focus on whether the right to cross-examination was a clearly-established right at the time of the Remaining Individual Defendants' alleged misconduct. To be found "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right." *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 604-06 (S.D. Ohio 2016) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). When considering whether a right is clearly established, "a district court must look to then-existing binding precedent from the Supreme Court, the Sixth Circuit or itself." *Adams v. Ohio University*, 300 F. Supp. 3d 983, 1001 (S.D. Ohio 2018) (citation omitted). The determination of whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Saucier*, 533 U.S. at 201.

Dr. Mitchell offers no authority establishing that the ability to cross-examine accusers in the context of an internal university proceeding about whether a non-tenured professor violated a written university policy prohibiting outside engagements is a "clearly established right." Nor could the Court locate any. Instead, she invites the Court to issue such a declaration in this matter based upon three cases: *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 396 (6th Cir. 2017), *Smock v.*

*Bd. of Regents of the Univ. of Mich.*, 353 F. Supp. 3d 651, 657 (E.D. Mich. 2018), and *Frost v. Univ. of Louisville*, 392 F. Supp. 3d 793, 804-05 (W.D. Ky. 2019).

Each cited case is inapposite. Those cases all involved sexual misconduct or harassment allegations against students or professors who sued their respective educational institutions for due process violations because they were unable to cross examine their accusers. The courts in those cases acknowledged that the Due Process Clause generally does not guarantee the right to cross-examination in school disciplinary proceedings. But those tribunals find that, where a disciplinary proceeding depends on a choice between believing an accuser and an accused, cross-examination is essential to due process. Those three cases involved the classic "he said, she said" credibility conundrum making cross-examination essential while this case does not. Rather, as the Remaining Individual Defendants argue, this matter focused on whether Dr. Mitchell violated Ohio State's policy against conflicting outside employment. The testimony of the so-called accusers was neither relevant nor necessary to the question decided by the FHC.

Furthermore, Dr. Mitchell does not assert that she lacked notice of the investigation, or that she was not permitted to provide sufficient evidence and testimony buttressing her cause. Indeed, the Second Amended Complaint sets forth the <u>eight</u> levels of review that occurred during Dr. Mitchell's 04-Complaint Process. Additionally, as part of her appeal to the FHC, Dr. Mitchell attended a hearing represented by counsel and offered testimony of her own witnesses while proffering extensive evidence in support of her position during the 04-Complaint proceeding.

Under these circumstances, the Court declines to declare that the right to cross-examine is clearly established and also declines to hold that the due-process afforded in this case was

19

constitutionally insufficient. Dismissal of this count on qualified immunity grounds under Fed. R. Civ. P. 12(b)(6) is proper.

In summary, the Court **GRANTS** the Remaining Individual Defendants' Motion to Dismiss Dr. Mitchell's § 1983 due process claims against them in their personal capacities. (ECF No. 44.)

### b.      Official Capacity

A state official, sued in her official capacity for prospective injunctive relief, is a person acting under color of law for purposes of § 1983. *Bd. of Trs. Sabis Int'l Sch. v. Montgomery*, 205 F. Supp. 2d 835, 847 (S.D. Ohio 2002) (citations omitted).

Dr. Michell's § 1983 due process claims against the Remaining Individual Defendants in their official capacities seek declaratory and injunctive relief. The Remaining Individual Defendants correctly argue that because her due process claims against them in their individual capacities fail, no relief of either type is available for these claims. Thus, the Court **GRANTS** the Remaining Individual Defendants' Motion to Dismiss Dr. Mitchell's § 1983 due process official capacity claims for injunctive and declaratory relief. (ECF No. 44).

### 4.   Equal Protection

Dr. Mitchell asserts that the Remaining Individual Defendants, in their personal and official capacities, violated the Equal Protection Clause by: (1) removing her graduate teaching duties; (2) recommending her termination; (3) subjecting her to harsher discipline than her male peers; and (4) terminating her employment, each based upon her sex. (ECF No. 38 ¶ 278.) The Remaining Individual Defendants argue that dismissal is required because the Second Amended Complaint fails to describe each remaining defendant's alleged unlawful conduct with specificity. (ECF No. 44 at 38, 42.) Dr. Mitchell replies that her allegations are detailed enough.

(ECF No. 46 at 64.) She also asserts liability is possible via the "cat's paw" theory. (ECF No. 38 ¶ 280; ECF No. 46 at 13, 61-64.) The Court reviews the § 1983 Equal Protection framework before considering each side's arguments.

Dr. Mitchell must initially allege a deprivation of rights secured by the "Constitution and laws" of the United States to state an equal protection § 1983 claim. *Jones v. Duncan*, 840 F.2d 359, 361-62 (6th Cir. 1988).  Here, Dr. Mitchell asserts that the Remaining Individual Defendants discriminated against her on the basis of her sex. This equates to an allegation of a deprivation of a constitutional right because the Equal Protection Clause confers a constitutional right to be free from sex discrimination. *S.K. v. N. Allegheny Sch. Dist.*, 168 F. Supp. 3d 786, 812 (W.D. Pa. 2016) (citing *Hill v. Cundiff*, 797 F.3d 948, 976 (11th Cir. 2015)). So, the Court turns its focus to whether Dr. Mitchell's § 1983 equal protection claims are sufficiently pled.

Dr. Mitchell must allege the same elements that are required to establish a disparate treatment claim under Title VII to assert a gender-based violation of the Equal Protection Clause under § 1983.  *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *LRL Properties v. Portage Metro. Hous. Auth.*, 55 F.3d 1097, 1111 (6th Cir. 1995) (quotation and citation omitted); *see also Smith v. City of Salem*, 378 F.3d 566, 577 (6th Cir. 2004).  Dr. Mitchell cannot meet this burden by simply alleging discriminatory intent played a role in her adverse employment decision. *Id*. Rather, she must allege sufficient facts demonstrating "that the adverse employment decision would not have been made 'but for' her sex. Put differently, [she must assert facts tending to show] that the 'discriminatory intent more likely than not was the basis of the adverse employment action.'" *Gutzwiller*, 860 F.2d at 1325 (6th Cir. 1988) (quoting

*Goostree v. State of Tennessee*, 796 F.2d 854, 863 (6th Cir. 1986), cert. denied sub nom.

*Goostree v. Montgomery County Quarterly Court*, 480 U.S. 918 (1987) (quotation omitted)).

### a. Personal Capacity

The Remaining Individual Defendants first maintain that Dr. Mitchell's § 1983 equal protection count against them in their personal capacities for monetary damages fails to state a claim upon which relief can be granted because the Second Amended Complaint neglects to specify the actions each of them took when allegedly violating her right to equal protection. (ECF No. 44 at 38-40; ECF No. 51 at 9.) Yet, the Second Amended Complaint alleges that Dr. Makhija sent the 04-Complaint to Dr. Goldsby; failed to send her two binders of supportive documentation to the CIC; declined to remove Dr. Ben-David from the CIC upon her request; forwarded the 04-Complaint to the CIC; and sent the CIC's findings to Dr. McPheron. (ECF No. 38 at ¶¶ 129, 132, 134, 139, 145, 150-51.) Regarding Dr. McPheron, the Second Amended Complaint asserts that he approved Dr. Makhija's judgment for immediate dismissal on November 19, 2018. (ECF No. 38  ¶¶ 154-55.) And the Second Amended Complaint pleads that Dr. Drake recommended Dr. Mitchell's dismissal from Ohio State. (ECF No. 38 at ¶ 162.) Thus, Dr. Mitchell has provided the specific actions of each Remaining Individual Defendant that form the basis for her personal liability § 1983 equal protection counts.

Ultimately persuasive, however, is the Remaining Individual Defendants' secondary contention that the Second Amended Complaint neglects to allege a sufficient factual predicate showing that they acted with the requisite discriminatory animus. (ECF No. 44 at 38-40; ECF No. 51 at 9); *see also Smith*, 378 F.3d at 577 (citation omitted) ("[t]o make out [a ¶ 1983 Equal Protection] claim, a plaintiff must prove that [s]he suffered purposeful or intentional discrimination on the basis of gender.") Dr. Mitchell does not directly respond to this argument

because the Second Amended Complaint indeed fails to include those details. Instead, she asserts that the Remaining Individual Defendants can be held liable absent their own lack of discriminatory motive pursuant to the "cat's paw" theory of liability.

"Under a cat's paw theory, the decisionmaker need not have notice of the subordinate's discriminatory purpose. The cat's paw theory, rather, imputes knowledge and discriminatory intent—the cat's paw is the 'unwitting tool' of those with the retaliatory motive." *Bose v. Bea*, 947 F.3d 983, 990-91 (6th Cir. 2020) (quoting *Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 427 (6th Cir. 2014)). The Sixth Circuit has yet to recognize application of the cat's paw theory in § 1983 actions. *Bose*, 947 F.3d at 991 n.4. Accordingly, due to the Second Amended Complaint's failure to include factual allegations regarding the Remaining Individual Defendants' discriminatory motive and the inapplicability of the cat's paw theory, dismissal of Dr. Mitchell's § 1983 Equal Protection Clause personal liability counts against the Remaining Individual Defendants is proper under Fed. R. Civ. P. 12(B)(6). The Remaining Individual Defendants' Motion to Dismiss this count is **GRANTED**. (ECF No. 44.)

### b. Official Capacity

Lastly, Dr. Mitchell's § 1983 equal protection official capacity claims seeking declaratory and injunctive relief against the Remaining Individual Defendants are dismissed because the Court dismissed her underlying equal protection counts against them in their personal capacities. The Remaining Individual Defendants' Motion to Dismiss these counts is **GRANTED**. (ECF No. 44.)

## IV.     CONCLUSION

Defendants' Motion to Dismiss (ECF No. 44) is **GRANTED** in part and **DENIED** in part. (ECF No. 44.) Dr. Mitchell's Title VII claim (Count I) against Ohio State remains pending. Dr. Mitchell's Title IX claim (Count II) against Ohio State is **DISMISSED**. Dr. Mitchell's due process (Count III) and equal protection (Count IV) counts against the Individual Defendants in their personal and official capacities are **DISMISSED**.

**IT IS SO ORDERED**.

<u>/s/ Sarah D. Morrison</u>
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**